(106 P.3d 74)
No. 91,785

JAMES D. LOEFFELBEIN, *et al.*, *Appellees,* v. MILBERG WEISS
BERSHAD HYNES & LERACH LLP, *et al.*, *Appellants.*

Opinion filed February 18, 2005.

*Matthew P. Hamner, Charles W. German,* and *Matthew T. Geiger,* of Rouse Hendricks German May PC, of Kansas City, Missouri, and *Frank H. Wohl, Helen Gredd,* and *Lauren C. Freundlich,* of Lankler, Siffert & Wohl LLP, of New York, New York, for appellants.

*Loren W. Moll,* of Caldwell & Moll, L.C., of Overland Park, for appellees.

Before GREEN, P.J., PIERRON and MCANANY, JJ.

Green, J.: In this interlocutory appeal, Milberg Weiss Bershad Hynes & Lerach LLP (Milberg Weiss) appeals the trial court's judgment denying its motion to dismiss for lack of personal jurisdiction. On appeal, Milberg Weiss contends that the trial court erred in exercising jurisdiction over Milberg Weiss under either the Kansas long arm statute, K.S.A. 2003 Supp. 60-308(b) or the Due Process Clause of the Fourteenth Amendment to the United States Constitution. K.S.A. 2003 Supp. 60-308(b)(2) states that a nonresident will be subject to the jurisdiction of the courts of Kansas if the nonresident commits a tortious act within this state. Plaintiffs have established a prima facie case that Milberg Weiss has committed a tortious act within this state. Moreover, when Milberg Weiss' tortious act within this state is considered in conjunction

with Milberg Weiss' contacts with the plaintiffs, the trial court correctly held that the contacts were sufficient to satisfy the due process requirements. Accordingly, we affirm.

James D. Loeffelbein (Loeffelbein), Terrie L. Pham, James D. Loeffelbein IRA, James D. Loeffelbein SEP, and Mallard Management, Inc. (plaintiffs), purchased 1,000,000 shares of stock in Rare Medium Group, Inc. (Rare Medium), a Delaware corporation. After Rare Medium announced a proposed merger, plaintiffs sought to sue Rare Medium for fraud. For this reason, Loeffelbein contacted Milberg Weiss in its New York office. Loeffelbein chose Milberg Weiss based on his knowledge of its reputation as securities counsel.

On May 14 and 15, 2001, Loeffelbein had various phone conversations with David Rosenfeld, a Milberg Weiss attorney. Loeffelbein told Rosenfeld that plaintiffs wanted to file a fraud action against Rare Medium. Rosenfeld stated that Milberg Weiss would investigate such a claim. Soon, Rosenfeld mailed Loeffelbein a certification in support of a class action complaint. On May 17, 2001, Loeffelbein signed the certification and faxed it back to Rosenfeld. Additionally, Rosenfeld stated that Milberg Weiss was willing to sue Rare Medium to recover Loeffelbein's stock loss. Rosenfeld warned Loeffelbein against selling any of his Rare Medium stock, explaining that it would otherwise be difficult to recover damages. Relying on this advice, Loeffelbein retained his stock. The value of the stock decreased steadily.

On May 25, 2001, Lori Feldman, another Milberg Weiss attorney, told Loeffelbein through a letter that Milberg Weiss was investigating his potential fraud claim against Rare Medium. The following week, Rosenfeld sent a letter to Robert Mitchell. Mitchell, who worked with Loeffelbein at Loeffelbein's house, helped Loeffelbein in his stock trading. In the letter, Rosenfeld confirmed an earlier telephone conversation between Rosenfeld and Mitchell where Mitchell stated that he was authorized by Loeffelbein to retain Milberg Weiss for a class action lawsuit. Mitchell signed the letter authorizing Milberg Weiss' representation of Loeffelbein.

On June 1, 2001, Milberg Weiss filed a class action suit against Rare Medium and others in Delaware. The suit alleged a breach

of fiduciary duty. When this action was settled, Milberg Weiss received legal fees of approximately $1.1 million. The settlement was of little benefit to common stockholders.

Later, plaintiffs sued Milberg Weiss, Rare Medium, and Mitchell, among others, in state court. The suit alleged fraud, negligence, breach of fiduciary duty, and a violation of the Kansas Consumer Protection Act, K.S.A. 50-623 *et seq*. Plaintiffs alleged that Milberg Weiss falsely represented its willingness to investigate a fraud claim against Rare Medium. Plaintiffs maintained that Milberg Weiss wanted to position itself as lead counsel in the preexisting breach of fiduciary duty class action suit against Rare Medium. Further, plaintiffs alleged that Milberg Weiss lacked authority to name plaintiffs in the class action lawsuit. In this regard, plaintiffs disputed Mitchell's authority to hire counsel on Loeffelbein's behalf.

Milberg Weiss and Rare Medium removed the case from state court to the United States District Court for the District of Kansas. The federal district court severed plaintiffs' claims against Milberg Weiss and Mitchell, however, and remanded those claims to state court. See *Loeffelbein v. Milberg Weiss Bershad Hynes & Lerach, LLP*, 2003 WL 21313957 (D. Kan. 2003) (unpublished opinion filed May 23, 2003) (*Milberg Weiss*).

In state court, Milberg Weiss moved to dismiss plaintiffs' petition for lack of personal jurisdiction. Milberg Weiss asserted that it lacked sufficient "minimum contacts" with Kansas to satisfy due process requirements. Milberg Weiss explained it had offices in New York, San Diego, Seattle, San Francisco, Los Angeles, Boca Raton, and Philadelphia. Milberg Weiss stated that it did not have an office or a registered agent in Kansas. Moreover, none of Milberg Weiss' 225 attorneys was licensed to practice law in Kansas. Milberg Weiss argued that it "does not directly market its services to Kansas residents and maintains no continuous and systematic presence within the state." Further, Milberg Weiss maintained that no attorney traveled to Kansas for any reason regarding plaintiffs' claims against Rare Medium and that Milberg Weiss did not perform any services on plaintiffs' behalf in Kansas. Alternatively, Milberg Weiss urged the trial court to decline to exercise jurisdiction based on the doctrine of forum non conveniens.

The trial court denied Milberg Weiss' motion to dismiss. The court determined that jurisdiction was appropriate under the Kansas long arm statute, K.S.A. 2003 Supp. 60-308(b), and that the exercise of personal jurisdiction satisfied due process requirements. Additionally, the trial court rejected Milberg Weiss' argument under the doctrine of forum non conveniens.

Milberg Weiss moved to reconsider or to amend judgment. For support, Milberg Weiss noted that the federal district court had dismissed similar claims brought by plaintiffs against Rare Medium and other defendants. In dismissing plaintiffs' claims, the federal court determined that the defendants lacked sufficient minimum contacts with Kansas to permit the exercise of personal jurisdiction. See *Loeffelbein v. Rare Medium Group*, 2003 WL 23484636 (D. Kan. 2003) (unpublished opinion filed October 21, 2003) (*Rare Medium*). Milberg Weiss argued that it had fewer contacts with Kansas than did Rare Medium. Consequently, Milberg Weiss argued that the state trial court erred in finding that it had personal jurisdiction over Milberg Weiss. The trial court denied Milberg Weiss' motion to reconsider. Milberg Weiss challenges the trial court's exercise of jurisdiction on both statutory and due process grounds.

A plaintiff bears the burden of establishing personal jurisdiction over a defendant. When a pretrial motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, however, a plaintiff need only make a prima facie showing of jurisdiction. In such a situation, the allegations contained in the petition are taken as true to the extent they are uncontroverted by a defendant's affidavits. If conflicting affidavits are presented by the parties, all factual disputes are resolved in the plaintiff's favor and the plaintiff's prima facie showing of jurisdiction is sufficient despite the contrary presentation by the defendant. An appellate court has unlimited review of a district court's ruling on a jurisdictional question. *In re Hesston Corp.*, 254 Kan. 941, 954, 870 P.2d 17 (1994).

In explaining the process for determining whether a nonresident should be subject to the jurisdiction of Kansas courts, our Supreme Court stated:

"The process of determining whether a Kansas court has personal jurisdiction involves a two-step analysis. First, the court decides if there is jurisdiction under K.S.A. 60-308(b), the Kansas long arm statute. Second, if 60-308(b) is satisfied, the court inquires if the exercise of personal jurisdiction complies with the due process requirements of the Fourteenth Amendment to the United States Constitution. K.S.A. 60-308(b) is to be liberally construed to assert personal jurisdiction over nonresident defendants to the full extent permitted by the Due Process Clause of the United States Constitution. [Citation omitted.]" *Kluin v. American Suzuki Motor Corp.*, 274 Kan. 888, 894, 56 P.3d 829 (2002).

### The Long Arm Statute

In their petition, plaintiffs alleged that the exercise of personal jurisdiction over Milberg Weiss was proper under the long arm statute, K.S.A. 2003 Supp. 60-308(b). In responding to Milberg Weiss' motion to dismiss, plaintiffs asserted jurisdiction under the "tortious act" provision of K.S.A. 2003 Supp. 60-308(b)(2). Plaintiffs characterized their lawsuit as an intentional tort case arising from Milberg Weiss' engagement in "misrepresentation and self-dealing." The trial court found that the exercise of personal jurisdiction was appropriate under subsection (b)(2) and possibly under subsections (b)(1) and (b)(7) of K.S.A. 2003 Supp. 60-308.

K.S.A. 2003 Supp. 60-308(b) provides, in relevant part:

"(b) Any person, whether or not a citizen or resident of this state, who in person or through an agent or instrumentality does any of the acts hereinafter enumerated, thereby submits the person and, if an individual, the individual's personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of these acts:

(1) Transaction of any business within this state;

(2) commission of a tortious act within this state;

. . . .

(7) causing to persons or property within this state any injury arising out of an act or omission outside of this state by the defendant if, at the time of the injury . . . the defendant was engaged in solicitation or service activities within this state."

Milberg Weiss argues that the trial court erred in determining that the requirements of K.S.A. 2003 Supp. 60-308(b) were satisfied and asserts that plaintiffs failed to make a prima facie showing that their injuries occurred in Kansas. Milberg Weiss further contends that plaintiffs did not establish that their shares of Rare Medium stock were actually located in Kansas. Milberg Weiss further

asserts that plaintiffs could not show that Milberg Weiss' alleged conversion of their claim against Rare Medium caused them to suffer injury in Kansas, because the allegedly unauthorized filing of the claim occurred in Delaware.

In contrast, plaintiffs maintain that the trial court correctly relied on the tortious act provision of the long arm statute. The plaintiffs point out that K.S.A. 2003 Supp. 60-308(b) does not contain a physical presence requirement. Indeed, our Supreme Court has held that under 60-308(b)(2): "[A]n injury which occurs in this state as a result of a negligent act outside this state is equivalent to the commission of a 'tortious act within the state.'" See *Ling v. Jan's Liquors*, 237 Kan. 629, 632-33, 703 P.2d 731 (1985).

In their petition, plaintiffs alleged that Milberg Weiss committed fraud by knowingly and intentionally making false representations about pursuing fraud claims against Rare Medium on plaintiffs' behalf. Plaintiffs alleged that these misrepresentations occurred in both telephone conversations and mailed correspondence. Plaintiffs maintained that they suffered damages as a proximate result of relying on Milberg Weiss' false and fraudulent representations.

Milberg Weiss argues that plaintiffs' economic loss due to the decline in value of Rare Medium stock was insufficient to confer personal jurisdiction over Milberg Weiss because all relevant events occurred outside of Kansas. To the contrary, Rosenfeld's representations in telephone conversations with Loeffelbein, coupled with Feldman's assurance in a letter sent to Loeffelbein that Milberg Weiss was continuing to investigate a fraud action against Rare Medium, caused plaintiffs to retain their shares of Rare Medium stock to plaintiffs' economic detriment. Accordingly, the tort is deemed to have occurred in Kansas. See *Ling*, 237 Kan. at 633.

The Kansas long arm statute is interpreted broadly to allow it to reach as far as due process permits. *Kluin*, 274 Kan. at 894; see *J.E.M. Corp. v. McClellan*, 462 F. Supp. 1246, 1250 (D. Kan. 1978). "'A case should not be dismissed for want of jurisdiction as being outside the scope of the statute, unless by no reasonable construction of the language could it be said to fall within the statute's terms.' Casad, Long Arm [and Convenient Forum, 20 Kan. L. Rev. 1,] 45 [(1971)]." *J.E.M.*, 462 F. Supp. at 1250-51. Consid-

ering that plaintiffs are required only to make a prima facie showing of jurisdiction at this point in the proceedings, we determine that plaintiffs' allegation of economic injury resulting from Milberg Weiss' fraudulent misrepresentations was sufficient to bring Milberg Weiss within the purview of K.S.A. 2003 Supp. 60-308(b)(2). See *Dazey Corp. v. Wolfman*, 948 F. Supp. 969, 973 (D. Kan. 1996) (exercise of personal jurisdiction under K.S.A. 60-308[b][2] proper where plaintiff's financial loss, allegedly caused by defendant's fraudulent conduct, occurred in Kansas).

*Due Process Requirements*

Having determined Milberg Weiss is reachable under K.S.A. 2003 Supp. 60-308(b)(2), we must now examine whether Milberg Weiss' contacts with Kansas were strong enough to satisfy due process requirements and justify the exercise of personal jurisdiction. The fundamental question in the due process analysis is whether Milberg Weiss' conduct and connection with Kansas were such that it should reasonably anticipate being haled into court here. See 948 F. Supp. at 974. Stated differently, the central question is whether Milberg Weiss "purposefully established 'minimum contacts' " in Kansas. See *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985). The Tenth Circuit Court of Appeals has adopted the following three-part test to aid this determination:

"(1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws.

"(2) The claim must be one which arises out of or results from the defendant's forum-related activities.

"(3) Exercise of jurisdiction must be reasonable." *Dazey*, 948 F. Supp. at 974 (citing *Taylor v. Phelan*, 912 F.2d 429, 432 [10th Cir. 1990]; *Rambo v. American Southern Ins. Co.*, 839 F.2d 1415, 1419 n.6 [10th Cir. 1988]).

Here, in finding the exercise of personal jurisdiction over Milberg Weiss satisfied due process requirements, the trial court did not elaborate on the quantity and quality of contacts Milberg Weiss had with Kansas. Rather, the trial court stated:

"Due process in not offended by requiring Milberg Weiss to defend this case in Kansas. It appears from the plaintiffs' claim that Milberg Weiss purposefully directed its conduct at the plaintiffs in Kansas and that the plaintiffs suffered injury as a result. There is a sufficient nexus between the conduct and the injury in Kansas. It is foreseeable that Milberg Weiss would be sued in Kansas."

On appeal, Milberg Weiss takes issue with the trial court's brief analysis of due process considerations. Milberg Weiss maintains that the trial court relied too heavily on plaintiffs' allegation of an intentional tort in finding the exercise of jurisdiction was justified.

### Purposeful Availment

The requirement of purposeful availment ensures that an out-of-state defendant will not be haled into a jurisdiction as a result of the unilateral acts of another party. 948 F. Supp. at 974. To this end, plaintiffs maintain that Milberg Weiss purposefully directed its activities toward Kansas, as evidenced by the telephone calls made to Loeffelbein and documents sent to Kansas. Milberg Weiss contends, however, that these isolated contacts were insufficient to permit the exercise of jurisdiction in Kansas.

For support of its challenge to jurisdiction, Milberg Weiss refers this court to the federal trial court's decision concerning *Rare Medium*, 2003 WL 23484636. In that case, the federal trial court dismissed plaintiffs' fraud action against Rare Medium and other defendants. Rare Medium had moved to dismiss for lack of jurisdiction, arguing it lacked sufficient minimum contacts with Kansas. In response, plaintiffs maintained that Rare Medium had established minimum contacts in Kansas through the commission of tortious acts. The tortious acts were alleged to have been committed by an agent of Rare Medium while on the phone with Loeffelbein. After noting that "[a]n out-of-state defendant who commits an intentional tort is not automatically subject to personal jurisdiction in the state [citation omitted]," the federal trial court determined that the purported agent's approximately 20 telephone calls to Loeffelbein, alone, were insufficient to support the exercise of jurisdiction over Rare Medium. 2003 WL 23484636 at *4.

Citing *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1077 (10th Cir. 1995), the federal trial court noted that telephone calls in

themselves are not necessarily sufficient to establish minimum contacts. Although the court acknowledged there is no bright line rule specifying the number of telephone calls deemed sufficient to establish minimum contacts, it found the quantity and quality of the calls to Loeffelbein fell short of creating minimum contacts. *Rare Medium*, 2003 WL 23484636 at *4.

Here, Milberg Weiss asserts that it had even less contact with Kansas than did Rare Medium. Moreover, because it did not purposely avail itself of the benefits of the laws of Kansas, Milberg Weiss argues that it should not be haled into court in Kansas. As previously stated, Loeffelbein initiated the contact with Milberg Weiss by calling its New York office. Milberg Weiss does not have an office or a registered agent in Kansas, nor are any Milberg Weiss attorneys licensed to practice in Kansas. Additionally, no one from Milberg Weiss traveled to Kansas in connection with events giving rise to the present suit. Given these circumstances, Milberg Weiss contends that the only connection between it and Kansas is that Loeffelbein resides in this state. According to Milberg Weiss, it "had no contacts with Kansas other than a few letters and a handful of telephone calls" and those were the result of plaintiffs' actions in seeking representation by Milberg Weiss.

Plaintiffs maintain that the *Rare Medium* decision is irrelevant to the present matter. Plaintiffs point out that the federal district court's severance of the claims showed that there was a lack of commonality between the claims against Rare Medium and those against Milberg Weiss. Indeed, in severing the claims, the federal district court stated that the counts alleged in plaintiffs' petition arose from two different sets of facts. *Milberg Weiss,* 2003 WL 21313957 at *5-6. Plaintiffs' claims against Rare Medium arose from securities fraud allegations. On the other hand, plaintiffs' claims against Milberg Weiss arose from the events leading up to Milberg Weiss' suit against Rare Medium on plaintiffs' behalf.

"Personal jurisdiction over a nonresident defendant is determined on a case-by-case basis. [Citation omitted.]" *Kluin,* 274 Kan. at 900. This court must examine the particular contacts between Milberg Weiss and Kansas to determine whether Milberg Weiss

purposely availed itself of the benefits and protections of Kansas laws. See *Dazey*, 948 F. Supp. at 974.

Milberg Weiss characterizes this lawsuit as arising out of its representation of plaintiffs in litigation taking place in Delaware and argues that that does not subject Milberg Weiss to jurisdiction in Kansas. For support of this proposition, Milberg Weiss refers this court to *Biederman v. Schnader, Harrison, Siegal & Lewis*, 765 F. Supp. 1057 (D. Kan. 1991). In *Biederman,* Kansas plaintiffs sued a Pennsylvania law firm in Kansas over fees arising from the firm's representation of plaintiffs in litigation outside of Kansas. The court granted the firm's motion to dismiss. The court noted that the firm's "brief visits to Kansas during discovery, phone calls and letters to Kansas, and checks received by [the firm] from a Kansas plaintiff [were] not sufficient contacts to support an exercise by the court of personal jurisdiction" over the firm. 765 F. Supp. at 1061. In the words of the court: "While in some cases telephone calls and letters may provide sufficient contacts for the exercise of personal jurisdiction, the ordinary use of the mail and telephones to the forum state will not meet due process standards unless it forms a substantial connection with the forum." 765 F. Supp. at 1061 n.4.

The *Biederman* court relied heavily on *Austad Co. v. Pennie & Edmonds*, 823 F.2d 223 (8th Cir. 1987). In *Austad,* a South Dakota business sued a New York law firm in South Dakota. The suit alleged breach of fiduciary duty and negligence arising from the firm's representation of plaintiff in a Maryland lawsuit. The firm's principal offices were located in New York. Its attorneys were not licenced to practice in South Dakota, nor had the firm ever advertised or solicited clients there. The firm's representation of plaintiff was arranged through a third party.

The Eighth Circuit Court of Appeals affirmed the district court's dismissal of the case for lack of personal jurisdiction. The *Austad* court determined that the firm's 3-day visit to South Dakota during discovery, that numerous telephone calls to plaintiff, that use of courier services, that monthly billings sent to South Dakota, and that checks paid to the firm by a South Dakota bank were insufficient contacts to warrant the exercise of jurisdiction in South Dakota. 823 F.2d at 226-27. In determining the firm had not pur-

posely availed itself of the benefits of South Dakota laws, the court stated that the firm's sole " 'substantial connection' " with the state was its representation of a South Dakota business in litigation taking place wholly outside the state. 823 F.2d at 226-27.

Both the nature and basis of the claims asserted against Milberg Weiss are distinguishable from the facts in *Biederman* and *Austad*. Unlike *Biederman* and *Austad*, plaintiffs' claims are directly linked to the alleged misrepresentations made by Milberg Weiss in those telephone calls and letters. Specifically, the petition alleged that Milberg Weiss made false representations regarding its willingness to investigate a fraud claim against Rare Medium on plaintiffs' behalf. Consequently, this case does not involve the "ordinary use of the mail and telephones to the forum state." See *Biederman*, 765 F. Supp. at 1061, n.4.

In *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 209, 211 (5th Cir. 1999), an Alaskan corporation based in Texas sued a German attorney in Texas. The corporation's suit alleged fraud, fraudulent inducement, and breach of contract and fiduciary duties. The case was removed to federal court and later dismissed for lack of personal jurisdiction.

The Fifth Circuit Court of Appeals reversed, stating that even a single act by defendant directed toward Texas that gives rise to a cause of action by plaintiff can be sufficient to support a finding of minimum contacts. 195 F.3d at 211, 216. According to plaintiff's allegations, defendant performed several tortious actions outside of Texas that were directed toward plaintiff in Texas. These actions took the form of letters, faxes, and phone calls from defendant to plaintiff. In these communications, the defendant made fraudulent misrepresentations and promises and failed to disclose material information. Regarding these communications, the court stated: "When the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment. The defendant is purposefully availing himself of 'the privilege of causing a consequence' in Texas. [Citation omitted.]" 195 F.3d at 213.

Here, plaintiffs' intentional tort claims arose from the content of Milberg Weiss' communications with Loeffelbein in Kansas.

These communications were sufficient to establish minimum contacts, as Milberg Weiss purposefully directed the alleged misrepresentations toward the plaintiffs in Kansas. See 195 F.3d at 213. See also *Calder v. Jones*, 465 U.S. 783, 789, 79 L. Ed. 2d 804, 104 S. Ct. 1482 (1984) (minimum contacts established in California where Florida journalists wrote defamatory article that they knew would affect plaintiff's reputation in California; journalists "expressly aimed" tortious actions at California).

Moreover, the fact that Loeffelbein sought out the services of Milberg Weiss does not prohibit a finding that Milberg Weiss purposely directed its activities toward causing a consequence in Kansas. In *Trinity Industries, Inc. v. Myers & Associates, Ltd.*, 41 F.3d 229, *cert. denied* 516 U.S. 807 (5th Cir. 1995), a Delaware corporation with its principal place of business in Texas sued Illinois attorneys in Texas. The suit alleged breach of fiduciary duty, civil conspiracy, and negligence arising from defendants' actions in counseling a competitor to sue plaintiff in Pennsylvania. Defendants removed the case to federal court, and the district court dismissed the case for lack of personal jurisdiction.

After noting that the mere existence of an attorney-client relationship is insufficient to establish minimum contacts with the forum state, the Fifth Circuit Court of Appeals determined that plaintiff had made a prima facie showing that defendants purposefully availed themselves of doing business in Texas. Defendants had an ongoing relationship with plaintiff over the course of several years that included numerous instances of representing plaintiff in Texas and other states. Notably, the plaintiff initially soliciting defendants' services did not prohibit a finding of purposeful availment. As the court noted: "Although personal jurisdiction does not lie when the defendant cannot control vulnerability to suit, the defendants at bar voluntarily assumed and continued the obligation of representing the Texas client." 41 F.3d at 231.

Resolving any factual disputes in plaintiffs' favor, as this court must do, we determine that Milberg Weiss misrepresented its willingness to investigate plaintiffs' fraud claims against Rare Medium. Accordingly, plaintiffs' claims went beyond asserting that Milberg Weiss wrongfully filed suit in Delaware, as Milberg Weiss seems

to suggest. Given Milberg Weiss' actions in misrepresenting its intentions through telephone calls and letters sent to Kansas, we determine that Milberg Weiss purposely availed itself of the privilege of conducting activities in Kansas. As a result, Milberg Weiss invoked the benefits and protections of Kansas laws. See *Hanson v. Denckla,* 357 U.S. 235, 253, 2 L. Ed. 2d 1283, 78 S. Ct. 1228 (1958); *Dazey,* 948 F. Supp. at 974.

*Connection Between Plaintiffs' Claim and Milberg Weiss' Forum-related Activities*

Next, we must determine whether plaintiffs' claims arose out of or resulted from Milberg Weiss' forum-related activities. See 948 F. Supp. at 974. Essentially the same factors used to determine whether a defendant purposefully avails itself of the privilege of conducting activities within the forum state are involved in determining whether plaintiffs' claims arose from the defendant's forum-related activities. To this end, Milberg Weiss contends that plaintiffs' mere allegation of an intentional tort was insufficient to establish a nexus between Milberg Weiss' contacts with Kansas and plaintiffs' claims. According to Milberg Weiss, its several contacts with Kansas were solicited by plaintiffs and constituted "nothing more than mechanical contacts with a client by a New York-based law firm in an effort to fulfill obligations undertaken outside of Kansas."

Contrary to Milberg Weiss' characterization, the telephone calls and letters directed toward plaintiffs were not simply "mechanical contacts" that were incidental to Milberg Weiss' representation of plaintiffs. Rather, the representations made in those calls and letters formed the basis of plaintiffs' claims against Milberg Weiss. Clearly, there was a sufficient nexus between plaintiffs' claims and Milberg Weiss' forum-related activities.

*Reasonableness*

Finally, this court must determine whether the exercise of jurisdiction in this case is reasonable. See *Dazey,* 948 F. Supp. at 974. Some factors relevant to this inquiry are the following: " 'the burden on the defendant,' the interest of the forum state in adjudi-

cating the matter, the interest of the plaintiff in obtaining relief, and the interest of the judicial system in securing efficient resolution of disputes, and the states' shared interest in furthering social policies. [Citation omitted.]" 948 F. Supp. at 974.

Milberg Weiss contends that the exercise of jurisdiction in Kansas is unreasonable because such would be both burdensome and inefficient. Additionally, Milberg Weiss argues that it could not have been expected to foresee that its relationship with plaintiffs would subject it to litigation in Kansas. In contrast, plaintiffs maintain that the exercise of jurisdiction is reasonable and would not offend due process principles.

*Buckeye Boiler Co. v. Superior Court,* 71 Cal. 2d 893, 907, 458 P.2d 57 (1969), offers some support for plaintiffs' view. In *Buckeye,* a products liability case, the court upheld jurisdiction. The court explained that if the constitutional requirements are met, the question is one of balancing conveniences to the parties. In the words of the court: "A balancing of inconvenience to the defendant against the interests of the state and the plaintiff in having the present litigation in California strongly favors the local jurisdiction." 71 Cal. 2d at 907.

Applying the aforementioned factors, we determine that the factors strongly favor conducting the present litigation in Kansas. As plaintiffs note, Milberg Weiss is a nationally known firm of 225 attorneys and has offices located in many areas of the country. In fact, Milberg Weiss has been involved in a number of lawsuits in Kansas. Further, Kansas has a particular interest in adjudicating this matter, as plaintiffs alleged that Milberg Weiss committed a tort within the state and the case involves Kansas law. See *Dazey,* 948 F. Supp. at 975 (state has special interest in exercising jurisdiction over those committing torts within its territory). Plaintiffs have an interest in obtaining relief in this matter, and Kansas would be the most convenient forum for them.

Given the relative status of the parties and the interest Kansas has in this matter, we determine that the exercise of jurisdiction over Milberg Weiss is reasonable.

Affirmed.